Mr. Chief Justice, and may it please the Court, there are three reasons to exclude reckless misdemeanors from the phrase use of physical force as it occurs in 921A.33. The first is that it's consistent with the definition of use that this Court has implemented in other cases. Second, it is consistent with the common law definition of battery. And third, it is consistent with the intentionality inherent in domestic violence. Ginsburg. But it's inconsistent with the treatment of bodily injury. I mean, I think you agree, because the Court so held, that either bodily injury or offensive touching is the act, satisfies the act requirement. And you say, if there's bodily injury, then reckless is enough, but if it's only offensive touching, then you need a higher mental state, intentional, knowing. Why do you – if both acts qualify equally, why shouldn't the same state of mind attach to each? The same state of mind should attach to each, and that is why intentionality is the state of mind that under the common law can attach to each, because intentional battery covered both the offensive physical contact as well as the physical injury, whereas recklessness covers only bodily injury. Sotomayor, I'm sorry. Intentionality, in my mind, is misperceived, because you think you're talking about intentionality as the act of causing the injury. But I understood common law battery to be the intentional act that causes the injury, i.e., if a husband threw a bottle at a wife, doesn't intend to hit her, but the bottle smashes against the wall and the glass embeds itself in her face, under the common law, that would have been a battery, because the act, the intentional act, was to throw the bottle. It wasn't to cause the injury, but the act caused the injury. I respectfully disagree, Your Honor. Under the common law, if we end up disagreeing because the government points to many examples where this is the case, how do you win? That's only on injury cases. And so you don't have that same confirmation or that same organization of the law with respect to offensive physical contact. And so my clients were convicted of offensive physical contact under a under the categorical approach. And so at that point, you can't say that they were convicted of anything that caused  Sotomayor, but the point is that the contact was intent to have occurred. Correct. The question is whether there was an act that caused that contact, regardless of whether it was intentional or reckless. The problem under the common law is that not all touches were considered to be illegal, and so that is why in Johnson this Court stated the common law as being the intentional application of unlawful force. Sotomayor, we were talking about common law battery as it applied to definition as it applied in a domestic setting. So I'm talking only about a domestic setting, which this is. This is serious, but the problem is, is that the government's formulation of any reckless conduct satisfying use of physical force is that it's not limited to batteries. Alito, the mens rea of recklessness could apply to the act of touching or to whether the act is offensive. Now, under main law, to which of those does it apply? It doesn't necessarily have to apply to both. Statutorily, it does apply to both. So if someone recklessly touches another person and that is offensive, that's a battery under main law? Yes, Your Honor. And the government cites a case exactly for that proposition, and that's the Gantner case. And what happened in that case? It was whether the defendant got an instruction on the simple battery rather than the sexual offensive conduct, and so that the court reversed it because it said that it was a proper instruction. Now, I mean, what were the facts? What did this person do that was involved a reckless touching? He went to wake in his stepdaughter, I believe, who was asleep on a couch, reached underneath a blanket, and to shake her awake and touched her naked body. Well, that seems like the recklessness there goes to the offensive nature of the touching, not to the touching itself. In other words, there's the act of touching. So he went to shake her, but he didn't intend to touch her? It was there can be recklessness as to result or recklessness as to circumstance. And so that is an example of recklessness as to circumstance by reaching underneath a blanket, if he had touched her on top of clothing, it would not have been the same offense that could have been charged. And so it was the fact that he touched her naked body and could not see that she was naked. Alito I don't really understand the answer. He didn't intend to touch her at all? That was his offense? No, he did intend to touch her, but that's exactly what he was doing. Okay. Well, that's what I'm saying. There are two different things. Did the person or does the person intend to touch, does the person intend to touch in an offensive way? Correct. And so then it seems like your answer to my question is that it is the latter that has the mens rea of recklessness. Under the main statute, it is the latter that has the mens rea of recklessness. Under the common law, it is the intent to have unlawful contact. And so that is why not all touches qualify, which is why you can't just have an intent to touch. You also have to have an intent to touch unlawfully. What is it that indicates that the Federal statute tracks the common law? The Federal statute gives its own definition. Your Honor, the Federal statute is the use of physical force. And so it is only because of Castleman having adopted the common law for purposes of force. But Your Honor is absolutely correct that we are not construing the common law here. We are construing the phrase use of physical force. And the problem with the government's case is that that use of physical force can occur in reckless driving context. If I am driving a car and I have a family member that qualifies under 921A33, in with me, and I get into an accident due to reckless conduct, that would qualify as a predicate under this statute according to the government's construction. Kagan. Ms. Villa, can I understand what you said? You said you are relying primarily, then, not on the common law history, but on the just the language, use of physical force, and what that means, the ordinary meaning of those words. Is that correct? The Court has to deal with the ordinary meaning of those words. The Court can take from the common law, it can take from many places, but the ordinary mean of use is to carry out an action or purpose by means of, in Castleman itself. But why isn't any of these examples that people give about the reckless behavior, why couldn't that be a use of force? I mean, Justice Sotomayor said throwing a plate against a wall. You say, well, I have a better example. It's driving a car really fast in a way that will endanger all the inhabitants. But, of course, we have said a number of times, I mean, we said it most recently in the Sykes case, that a car is an instrument of force when used recklessly in that way. So why aren't all of these kinds of examples consistent with the ordinary meaning of use of force? There's a substantive difference, though, between driving recklessly and not intending to harm the person that is with you in the car and throwing an object at a person. And so really the example of throwing an object at a person is that intentional use of force against that other person. That defendant can testify all day and all night that I didn't intend to. Kagan Of course, you are adding language to the statute now, because you said against another person, and that is indeed the language in Leocal, but in Leocal we said we are not going to decide the question here, which is just the phrase use of physical force, not against another person, just the phrase use of physical force. And tell me, I mean, I guess your car example doesn't move me very much, so see if you can give me an example, which would be reckless behavior under a battery statute, but which you think would not involve the use of force. I had a client once who pled guilty to a misdemeanor where he was actually running away from a guy who was trying to beat him up, and he closed the door very forcefully behind him and caught the guy's fingers in the door. Kagan Well, you just said it, he closed the door very forcefully behind him. That's the use of physical force. It was the use of physical force, but what he explained is that I closed the door. The door hit the guy. I didn't mean to hit the guy. I knew he was behind me. I didn't mean to. Kagan I know, and that's why it's reckless and not knowing, or whatever the other term is. But you are still using physical force. And that's the term that has to be interpreted here, is the use of physical force. But the Court has said, with all due respect, that it is to carry out an action or purpose by means of force. My client closing the door, he didn't mean to hurt the other guy. He meant to close the door. And so he was using force to close the door, but he wasn't using force to hurt the other guy. Kagan Well, quite right. But the language — I feel like I'm repeating myself a little, so I'll just try it one more time. The language is just the use of force. And what we're trying to decide is whether that includes use of force that indeed is carried out without an intent to harm, but is carried out with an understanding that there is a risk of harm. That's what recklessness is. And, you know, doing something like driving a car 200 miles an hour or throwing a plate or slamming a door when somebody's hand is in the vicinity, all of those things involve the requisite risk, and all of those things involve the use of physical force. But not in the sense that the Court has construed use in the past. And so they have, for instance, in Smith, which was decided in 1993, that case was where it was to carry out an action or purpose by means of, and so it's not to carry out an action to close a door by means of hurting somebody. And so there is this disconnect, and that is inherent because in the — in recklessness, because what you're doing is that you aren't looking to hurt it. There may be a risk, but that's not your purpose. And so the whole difference between purposeful knowing behavior as opposed to reckless behavior is, is that you have a purpose that is pointed someplace else with a risk that there might be a collateral consequence, rather than actually seeking to accomplish that collateral consequence. Sotomayor, don't you have to look at this in the domestic violence context? Because the definition, use of force, is put in terms of a misdemeanor under Federal or State tribal law, means — so it means a domestic violence. And isn't it prototypical in many of these domestic violence cases where much of the violence employed is not direct violence, not hitting some — there's a lot of that, but there's an awful lot of the examples I raised of reckless conduct that leads to violence, either from drunkenness or from other conditions. You're using use of force as it's been defined in other areas. Why does it fit into this domestic violence case? Because domestic violence, according to the Castleman opinion, was violence or nonviolent conduct that's offensive and is intended — Sotomayor, that's the offensive-touching prong. That has to be — Excuse me? That was the offensive-touching prong. I'm talking about here the use of physical force prong. Except for the — That causes injury in some way. But it's a singular definition. It's use of physical force, whether it is touching or not, it is something that is intended to control one's partner. And so if you have to use force to control one's partner or you do something that is offensive to control one's partner, it is still the idea that you are implementing any level of force in order to achieve an end, and that end is the control inherent in domestic violence. The government tells us that this is — heavy consequences ride on this, that is, that many domestic violence situations would not be subject to prosecution under this statute on your reading if you require knowing or intentional rather than reckless state of mind. Yes, Your Honor. Do you agree with that? I don't necessarily agree with that. The reason I don't is because, as was noted in footnote 8, courts have generally construed use of physical force to exclude reckless conduct. And so there are, for instance, in Castleman itself, it falls in the Sixth Circuit. The Sixth Circuit in Portela held use of physical force excludes reckless conduct. It was not construing 922G, but I would note that the State prosecutor in Castleman had a statute much like that in Maine that disallowed knowing, purposeful or reckless conduct, and rather than charging all of them, that prosecutor restricted it to knowing purposeful conduct. But do you think that prosecutors, when they are — State prosecutors, when they are charging these domestic violence offenses, are going to be looking ahead to the consequences of the particular charge for Federal firearms laws? Yes, Your Honor. Do you think that's realistic? Yes, Your Honor. And it is because there is a large part of the budget for domestic violence within the Federal government that goes towards training and joint task force so that there is an awareness on the part of State prosecutors exactly for this purpose. Well, let me ask you this, which is somewhat related. So Congress passes this statute, and they do not want a person who has been convicted of a misdemeanor crime of domestic violence to have a firearm, okay? What was the year when that was passed? 1996, Your Honor. Okay, 1996. That's what they want to do. And you agree that a — that the offensive battery falls within that definition. Am I right? The offensive contact battery, yes, Your Honor. All right. What reason is there to think that when Congress did this, they wanted common-law battery only? They didn't want battery as it is defined in general by a great many States. Because it didn't — At that time, am I not — is it not correct that by that time a majority of the States had battery offenses that reached reckless conduct? You are correct that many States did, but the problem with that scenario as to what Congress intended is that it did not adopt battery as the definition of a misdemeanor crime of domestic violence for purposes of domestic abuse. But I understand that, but I thought you would agree that battery in some sense falls within the definition — falls within the category of a misdemeanor crime of domestic violence. I have to because of the Castleman so ruled. Yeah, okay. Well, if you agree with that, then your argument is that they just — all they think about across the street is the common law, so battery, common-law battery. They don't care what the actual statutes are around the country. They are just interested in the offensive common-law battery. Your Honor. And is that realistic? Your Honor, that is not my position. My position is, is that common-law battery offensive physical contact could only be accomplished through intentional conduct. The term used had been construed already by this Court prior to 1996 as being an affirmative, purposeful conduct that you are taking an item and making it your instrument, that you are accomplishing something with that. And in this case, it would have been force. And so then, if you accompany that with the idea of domestic violence as the intentional controlling of a domestic partner, all of those ideas, each one of them, has intentionality at its core. And so that when Congress used this phrase as an element, not as a generic crime of battery, but as an element of any misdemeanor crime, it is the intentional use of physical force, because intentionality, use, as well as physical force and domestic violence all share that. Alito, I think you are losing me. I thought you were acknowledging that reckless conduct would be sufficient when it is, when physical injury as opposed to offensive touching is involved. Is that right or not? Under the common law, in about the mid-1800s, there was a subset of batteries that did adopt a negligent, not a negligence, but a recklessness factor. But that is not the definition given in Johnson, and it is not the definition of the law. Ginsburg. What was that category? That was the category where bodily injury resulted, is that right? Yes, Your Honor. So the answer to Justice Alito's question is yes, that bodily injury does trigger this statute. It's the question I opened with. If the conduct is covered, whether it is touching or bodily injury, why shouldn't the state of mind match? Why shouldn't the same state of mind do for both bodily injury and offensive touching? Because it would be inconsistent with the idea that when you adopt a common law term, that you adopt all of the soil that went with that common law term. Well, what's the common law term? The common law term is the battery term as informing force.  I don't get the statute. The statute talks about use. It is use. And so force was at issue in Castleman, and that's where this Court identified the common law battery, the level of force involved in a common law battery as being the level of force for purposes of this statute. But we wouldn't think that the common law has some great definition of the word use, would we? No, Your Honor, which is why that normal usage for use of physical force is the intent also intentional. And so I'm just saying it's not there. I mean, I hear you today as basically making an ordinary meaning argument, which I think is a good thing, because all the briefing on both sides of this has been talking about the common law until it's coming out of your ears, and it's not clear to me why the common law makes any difference at all here. I mean, you know, Congress was operating against a backdrop. It was not the backdrop of the common law. It was the backdrop of 50 States having battery statutes. There's no word in this statute which is a defined, you know, which was a settled common law term. So the question is, what was Congress doing? Congress, we said in Castleman, wanted to basically capture the set of battery statutes in which, which were used for people engaged in domestic violence. Almost all of those statutes use recklessness within them. Why isn't that the proper place to look rather than the common law? Because Congress used a narrower definition than many battery statutes, and so it couldn't have wholesale been adopting those battery statutes as meaning use of physical force. Kennedy, the statute doesn't talk, say the word battery, it doesn't use it. It defines it in this special way. It defines it in a very special way. In all of the parts, you have use of physical force, which this Court had defined as having been made the user's instrument, which is that intentionality part, prior to Congress adopting this. It had consisted of use of physical force in other statutes where recklessness was excluded, and it's — it did not adopt, again, it doesn't say battery anywhere in the statute. And so saying that they adopted battery may be a way of trying to think about it, but it's not what they wrote. And they also narrowed the idea of what does constitute an appropriate misdemeanor, because, again, as in Castleman, the Court recognized that not everything under the Tennessee statute would qualify, because there were threats, but not threats of a deadly weapon. All of the use of physical force, the attempt, attempts are specific intent crimes, and so that's also an intentional crime. And then threats are usually very intentional, and so. Sotomayor, can you please go back to the question Justice Kagan asked you, and not using the shaking somebody, because I don't understand how shaking someone doesn't constitute the use of physical force. It may not be great force, but it's touching. What other example do you have of a reckless act that wouldn't involve the use of physical force? You're sort of saying it has to be intentionally offensive. Correct. As opposed to? And so if the government's formulation were adopted, and I came up to somebody who I thought was my husband, and I patted him on the back and say, hi, honey, and he turns around and is like, oh, my gosh, that isn't him. I had touched him, I intended to touch him. I was mistaken as to who it was, and so that person could take offense. That could be a reckless touching that does not involve – it involves touching minimally. That could be an offense. It always involves, however, the touching. It is. And the use of force to constitute the touching. It could be by poisoning. It could be by taking a pen out of somebody's hands. So what difference does it make whether it's intentional or reckless in terms of the culpability involved? In terms of the culpability, it's because it's not your intent to actually harm somebody in closing a door. And so – Sotomayor's Court, and we're giving examples that are not domestic violence examples, but that has caused a sufficiently offensive touching to constitute a crime. So that's going to be prosecuted. And it could be prosecuted for many reasons, including must arrest. Some neighbor hears a disturbance and so calls the police. The police comes and say, well, did he touch you? He says, yes, he touched me, but it wasn't a big deal. Okay. You have to be arrested. You go in. You go through the process. You plead guilty because you get out and you need to go to work the next day. Those are not the types of scenarios that Congress had in mind. Ginsburg's Court, the example that you gave, though, would never come under this statute because there isn't a relationship. You come up to a stranger, you're walking behind a stranger, and you think the stranger is your spouse, doesn't that – that stranger is not related to you in the way that the statute requires. That is true. There are other reasons, though, where interactions between people who are related may not be – that the touching may occur, but it may either not be wanting to be offensive, such as just wanting to touch somebody to wake them up, instead of wanting to offend them. And so that's the difference. I would like to reserve the rest of my time for rebuttal, please. Roberts. Thank you, counsel. Ms. Eisenstein. Mr. Chief Justice, and may it please the Court. This Court has twice interpreted section 922G9 in Hazen and Castleman, and each time concluded that Congress intended to keep guns away from those convicted of assault in battery under generally applicable State and Federal and Tribal law. Petitioner attempts to distinguish between offenses that cause bodily injury and those that involve offensive touching. But as this Court already decided in Castleman, that is a fallacy. That distinction is elusive. And that's because States, including those that prohibit the causation of bodily injury, even those offenses may include offenses that are similar in terms of degree to offensive touching. In fact, that was what was at issue at Castleman itself. It was the bodily injury prong of the Tennessee statute, not the offensive touching prong. And in that case, the bodily injury could be committed in a way that involved only slight injury. And yet this Court refused to distinguish by degree of force batteries that qualify as section 922G9 predicates. Keep in mind that States overwhelmingly define battery only as to the resulting injury. Petitioner's rule, which would limit misdemeanor crimes of domestic violence to intentional conduct, would require a prosecutor in those jurisdictions to prove in the underlying offense not only that the contact and the push, the hit, the grab was intentional, but that prosecutor would also have to show that the abuser intended the resulting injury in order to prove the battery offense under the vast majority of State and under Federal law. Roberts, what's so bad about that? I mean, given her door example, for example, why should the accidental, or perhaps you would say she, he or she knew that the person was close, why should that constitute the misdemeanor crime of domestic violence? Well, in part because Congress intended to cover batteries. And the way not only common law, but also in modern, under the common and generic understanding of battery, define a battery offense is only as to the causation of the resulting harm. And keep in mind, reckless conduct, and Petitioner avoids the fact of what reckless conduct is. A reckless conduct is not an involuntary or negligent or even an accidental act. Reckless conduct is voluntary conduct. It's conduct where an individual chooses to act in conscious disregard of a substantial and known risk of harm. So if the person in your example, Mr. Chief Justice, slammed the door not realizing the fingers were there, that's not going to be reckless conduct at all.  And that's why I'm saying it's not an involuntary or negligent act. Well, I mean, you don't know. You're running away. What if it's a close call? You don't pause to think, well, gosh, maybe he's close enough or she's close enough that this will, you know, hurt his fingers or something. I mean, is that recklessness? I think to the degree to which the individual consciously disregards the substantial risk of harm as well. Yeah. You don't want to turn around and see how close the person chasing you is if you slam the door. Oh, gosh, that's going to, you know, pinch the fingers or something. But I think that the what feels wrong about the hypothetical is not the degree of intent of the actor, it's the extent to which that person may be justified in the door slamming, which was that this was an act perhaps of self-defense. I think the more prototypical examples are situations where, that this Court highlighted in Castleman, where an individual takes intentional action to make contact with their partner, for example, if there's a push, reckless as to whether his wife simply stumbles backwards or falls down and injures herself. And that's the way States overwhelmingly frame their assault and battery statutes. And that's another. Kennedy. What about Justice Ginsburg's example of operating an automobile? The husband is arguing with his wife and speeds through a stop sign and the wife is injured. What result under the statute? Well, Your Honor, I think that under an assault, a general assault and battery statute, it's theoretically possible that a person could be convicted of battering his or her spouse under those circumstances. I don't think that's problematic for two reasons. One is, I think it's an extremely narrow category of offenses, and Petitioner has pointed to no actual examples. Well, the main statute says recklessly causes bodily injury. So I agree with Your Honor that, in theory, that type of offense could constitute a battery, but to the degree to which that's prosecuted where, in the real world, that's prosecuted whether a domestic family member is the sole victim, and that that is only a misdemeanor, that there's not sufficiently severe injury or other factors that rise to the level of a felony offense, which would be disqualifying under its own right, I don't think that that level of overbreath is problematic under the statute. Kennedy, I'm not talking about overbreath. I'm talking about interpretation of the statute. The statute includes a misdemeanor, so that disposes of that part of your answer. The statute covers a misdemeanor. Correct, Your Honor. But what I'm — but my point is that the type of scenario that is posited where both there would be a reckless, sort of a generally reckless conduct, that the victim happens to be, by chance, the family member as opposed to another member of the public, and thus qualifying as a section 922G9 predicate, is narrow indeed. And the converse of that is striking. While the overbreath of the hypothetical — Well, but it's narrow, but it seems to qualify under the statute. I don't quite understand your answer. You say, oh, well, it's narrow. But it's still a violation. That's the meaning of the statute. I think it's a violation under the meaning of general assault and battery. But I also think that there's nothing wrong with, as Justice Kagan suggested, with treating that type of offense as just qualifying. So you're saying that the example is covered by the statute? Yes, Your Honor. And I think, though, that to the extent to which that raises a concern in terms of overbreath, I don't think this Court should be concerned about that, because what Congress was worried about wasn't an overbreath of these prosecutions against family members. Instead, they went to a real underreporting, underprosecution, and the low conviction rates of these offenses. This was the problem that Congress addressed, and the whole reason why they extended the firearms ban from felony offenses. Which of our cases say that you don't have to worry if the categorical approach covers conduct of the sort Justice Kennedy was talking about, because Congress meant to cover other things? Well, Your Honor, I think that you're right that the categorical approach and its strictures can cause real problems if there's any degree of overbreath in the statute. But that's exactly why in interpreting Section 922G9 and what Congress's purpose was is extremely important here. Because to the extent to which Petitioner's view is adopted, which would require only intentional conduct to qualify, any degree of overbreath, such as Justice Kennedy's one example in a State of California of a driving offense, would exclude the entire statute. Roberts. Roberts. Roberts. I'm not sure overbreath is the right legal term. So you think it's an appropriate defense under a prosecution here that the type of statute that Congress had in mind? Yes, it fits under the terms of the statute, but it's not what Congress had in mind. And there's going to be argument about that. No, Your Honor. My argument is the opposite, which is that this Court should effectuate Congress's purpose by giving Section 922G9 the meaning that Congress intended, which is to cover generally applicable assault and battery statutes, regardless of whether on a rare instance they may end up covering an individual who is recklessly driving and injured a family member. I thought your answer was that the statute does cover it, but it's most unlikely that a prosecutor would bring such a case. I think that's what you started to say about it. That's correct, Your Honor. I think it's unlikely that those prosecutions would be brought in the State offense under those circumstances, and that there's no reason to drastically constrain the interpretation of Section 922G9. Do we have precedent from this Court saying it's okay, we can trust the prosecutors to do the right thing? Can you cite me a case that says that? Your Honor, I do not represent that. But what I do suggest is what we're looking at here is not what prosecutors might do under the State, the underlying State prosecution, but what Congress intended to cover under Section 922G9. So in order to avoid a hypothetical scenario where a family member may be injured in a nondomestic context, the result of requiring intentionality as to both the harm and the touching would be to eliminate all of the statutes that Congress, in fact, intended to cover. And it will go home. Ginsburg-McGillivray What about the rule of lenity? We are reviewing a decision of a court that divided, and both judges wrote very strong opinions. And we also have 18 U.S.C. Section 16, where a crime of violence doesn't include a reckless state of mind. So putting those together, the other statute, plus this was a split decision, why doesn't the rule of lenity apply? Your Honor, the rule of lenity only applies where there is grievous ambiguity in the statute. And I respectfully submit that there is no such grievous ambiguity. Congress's intent was clear, and this Court already found as much in Castleman and in Hayes, which is that there was a class of offenses that Congress intended to cover by the statute, which were generally applicable assault and battery statutes. And the rule that Petitioner suggests would exclude all of those offenses and would frustrate that clear purpose of Congress. So lenity doesn't apply for that reason. And there is no ambiguity, not only as to the purpose, but as to what battery itself encompasses. Petitioners have tried to argue that battery, either at common law or in contemporary practice, that there was some requirement of an intent to do harm. And the overwhelming weight and universal weight of authority points the opposite direction. Even the sources cited by Petitioner establish that at common law there was no requirement for the intent to do harm. And certainly States, in adopting their assault and battery provisions, have modeled that formulation. Another way to look at this is, outside of the common law, is the way that Taylor examined the statute of burglary under the ACCA offense, which is to, rather than turning just to the common law, is to view this as covering generic battery. And when looked at that way under the contemporary practice, the model penal code and the uniform opinion of the courts of appeals and commentators all have concluded that battery was not limited to a purpose to cause or result in harm, but included conduct that could be reckless. In the face of Petitioner's hypotheticals, Petitioner struggles to even conceive of a hypothetical example of where there is a reckless battery that would, against a family member, that would not constitute a misdemeanor crime of domestic violence. The converse is that Congress enacted section 922G9 to address a vital public safety problem. It identified those who had been convicted of battering their family members as posing a dramatically increased risk of perpetrating future gun violence against their family. This Court should continue to interpret section 922G9 in light of that compelling purpose. If there are no further questions. Mr. Eisenstein, one question. Can you give me — this is a misdemeanor violation. It suspends a constitutional right. Can you give me another area where a misdemeanor violation suspends a constitutional right? Your Honor, I'm thinking about that, but I think that the question is not, as I understand Your Honor's question, the culpability necessarily of the actor in terms of the offense below. Well, I'm looking at the — you're saying that recklessness is sufficient to trigger a violation, misdemeanor violation of domestic conduct that results in a lifetime ban on possession of a gun, which at least as of now is still a constitutional right? Your Honor, to address — Can you think of another constitutional right that can be suspended based upon a misdemeanor violation of a state law? Your Honor, while I can't think of specifically triggered by a misdemeanor violation, other examples, for example, in the First Amendment context, have allowed for suspension or limitation of a right to free speech or even free association in contexts where there is a compelling interest and risks associated, in some cases, less than a compelling interest under intermediate scrutiny. This is a — how long is this suspension of the right to own a firearm? Your Honor, the right is suspended indefinitely, but — Okay. So can you think of a First Amendment suspension or a suspension of a First Amendment right that is permanent? Your Honor, it's not necessarily permanent as to the individual, but it may be permanent as to a particular harm. And here Congress decided to intervene at the first instance that an individual is convicted of battering their family members because it — it relied on substantial and well-documented evidence that those individuals pose a long-term and substantial incumbent to crime. So in each of these cases, had — did any of the defendants or, in this case, Petitioners, use a weapon against a family member? In neither case did they, but these Petitioners — So that the — again, the suspension is not directly related to the use of the weapon. It is a suspension that is actually indirectly related or actually unrelated. It's just a family member's involved in a misdemeanor violation, therefore a constitutional right is suspended. Yes, Your Honor, but I believe that in terms of the — the relationship between Congress's decision to try to — to prevent domestic gun violence and its means of doing so — Even if that — even if that violence is unrelated to the use — the possession of a gun. Well, Your Honor, I think the studies that Congress relied upon in formulating the misdemeanor crime of domestic violence ban didn't — were directly about the use of a gun because what they showed is that individuals who have previously been battered their spouses pose up to a six-fold greater risk of killing by a gun their family member. Well, let's — let's say that a publisher is reckless about the use of children in what could be considered indecent displays and that that triggers a violation of, say, a hypothetical law against the use of children in these ads. And let's say it's a misdemeanor violation. Could you suspend that publisher's right to ever publish again? Your Honor, I don't think you could suspend the right to ever publish again, but I think that you could limit, for example, the manner and means by which publishers — So how is that different from suspending your Second Amendment right? Well, Your Honor, I think that in terms of a — the compelling purpose that was identified here, which was the prevention of gun violence, and the individual nature of the — of the underlying offense. So here, this isn't a misdemeanor crime directed at any person at large. These are misdemeanor batterings directed at members — specified members of the — of that individual's family. Congress has put — Could you have a better case if this were a gun crime? Your Honor, I think it would be perhaps a better case, except that the evidence that Congress relied on and the courts below that have addressed the Second Amendment concerns that Your Honor is highlighting have even gone into a more robust analysis of the evidence that ties initial crimes of battery to future gun violence. That evidence is extremely strong. And Congress recognized that this was a recurring and escalating offense. Petitioners are good examples of this. While they didn't reach, thankfully, the point where they were able to reach for a firearm and were prohibited from having a firearm under Federal law, they have each been convicted multiple times of domestic violence offenses and possessed the firearms in close proximity. So these aren't individuals who had long-ago convictions and are suffering from that ban. Congress also contemplated exactly the lifetime nature of the ban that Your Honor suggested and left it in States' hands to resolve that by allowing States to expunge or pardon convictions in cases where an individual either petitions to do so, or in some States as a matter of course. So I understand Your Honor's concern that this is a potential infringement of individual Second Amendment rights, but I believe that Congress has identified a compelling purpose and has found a reasonable means of achieving that purpose. Kennedy, I suppose one answer is just a partial answer to Justice Thomas' question about what is known as SORNA, a violation that sexual offenders have to register before they can travel in interstate commerce, but that's not a prevention from traveling at all, it's just a restriction. Well, Your Honor, it's a prevention in requiring prophylactic measures in order to prevent a substantial, because Congress has identified a substantial risk of harm from people identified as committing those type of offenses. Breyer, what is it we have, they've raised this in their brief, they say, let's focus on the cases in which there is a misdemeanor battery conducted without an intentional or knowing state of mind. Now, they say, if this in fact triggers, this is the question Justice Thomas asked. If this in fact triggers a lifetime ban on the use of a gun, then do we not have to decide something we haven't decided? And I think would be a major question. What constitutes a reasonable regulation of guns under the Second Amendment given Heller and the other cases, with which I disagree? But the point is, she's raised a question, and she wants us to answer that question. Is this a reasonable regulation, given that you just heard the argument, in part, given the distance and so forth? So what am I supposed to say in your opinion in respect to that rather important question? Your Honor, two answers to that. First is this comes up only in the nature of constitutional avoidance, not as a direct answer to the Second Amendment challenge. As we've already argued, this statute in the government's view is clear that misdemeanor crimes of domestic violence include batteries, whether they be committed or not. Breyer, I'd stop you at the first point. Your argument on the first point is that she did not raise the constitutional question. She said in order to avoid a constitutional question, we should decide it in thus such-and-such a way. So one answer would be, well, maybe so. We aren't facing the constitutional question. We are simply facing the question of what Congress intended. And if this does raise a constitutional question, so be it. And then there will, in a future case, come up that question. So we or our point is we don't have to decide that here. That's correct, Your Honor. Thank you. If there are no further questions. Thank you, counsel. Two minutes, Ms. Feigin. Your Honor, Congress did not use the word battery in 921A33. And so the question is, is whether under the rule of lenity the Court can then say battery is the standard that we are going to use in order to construe this. And it's a push-me-pull-you because it is the use of force, but that is not the standard that we are going to use. And that doesn't have to be a prior battery conviction. It could be any misdemeanor conviction that has a state of recklessness for the state of mind and results in any involvement of a domestic partner. And I think that there is enough play within the statute itself, as well as the extent of the common law, to say that that is a reason for applying the rule of lenity. There is also the underlying constitutional questions in this Court as in being able to abrogate a constitutional right indefinitely based on reckless conduct, I believe, also presents extreme due process concerns. And for those reasons, I believe that the Court should conclude that under these circumstances it is best to avoid that question and to construe the statute the way that is consistent with the words. Thank you. Thank you, counsel. The case is submitted.